1817.

PHILLIPS
v.
THOMPSON.

## PHILLIPS *against* THOMPSON.

A holder of a note is entitled to the benefit of a collateral security given by the maker to the endorser, for his indemnity.

A security taken for a specific purpose can be applied by the holder to that precise object only, and no other.

*R.*, a maker of a promissory note, gave a judgment bond to the endorser, to indemnify him against his endorsement. The note was protested for non-payment, but due notice was not given to the endorser. He, however, afterwards assigned the judgment to the holder of the note, in consideration of being released from all responsibility on his endorsement. This assignment was held to be a waiver of want of due notice, and tantamount to a promise to pay.

A subsequent mortgagee, or judgment creditor, has no equity to allege against such a waiver of want of notice, in order to avoid the judgment so given for the indemnity of the endorser.

THE bill stated that *David Reed*, being indebted to the plaintiff, assigned to him, on the 12th of *March*, 1814, as security for the debt, a bond and mortgage of *O. W. Van Tuyl*, to *Reed*, dated the 1st of *January*, 1813, for 1,000 dollars. That when the plaintiff took the assignment, he supposed the premises free from all encumbrances. That he had since discovered that *Reed* gave a judgment bond *(on which judgment was entered the 2d of *July*, 1812, in the Supreme Court,) for 4,000 dollars, to *Deforest* and *Osborn*, to indemnify them as endorsers of a note made by him for 4,000 dollars, and previously endorsed by the defendant, and delivered to *Isaac Bronson*. That the note was payable at 90 days, and was, several times, renewed with the same endorsements, until the 14th of *January*, 1814; and the last note, of that date, was protested for non-payment, but *no notice* was given to the endorsers, *Deforest* and *Osborn*, so as to charge them as endorsers; and the note was not afterwards renewed. That to indemnify the defendant against his endorsement on the note, and for other responsibilities, *D. Reed* and *Henry Reed* gave a judgment bond to him for 4,500 dollars, on which a judgment was entered up on the 19th of *March*, 1814, and on which the defendant had taken out execution, and raised 3,000 dollars out of the personal estate of *D. R.* and *H. R.*, and had also levied on their lands to a large amount. That *Deforest* and *Osborn* assigned the judgment of *D. Reed* to *Bronson*, who has assigned it to the defendant, though *Deforest* and *Osborn* knew that they were not liable as endorsers, and that the judgment was given solely for their indemnity as endorsers. That the defendant had also taken out execution on this

*April* 3d.

[ * 419 ]

1817.

PHILLIPS
v.
THOMPSON.

judgment, which had been levied on the property mortgaged, and assigned to the plaintiffs, which was advertised for sale.

The bill prayed for a perpetual injunction against selling the mortgaged premises; and that the defendant cause satisfaction to be entered on the judgment, or that he release the lien, &c.

The defendant, in his answer, alleged, that *Bronson* made it a *condition* of his loan of the 4,000 dollars to *D. R.* that a judgment bond should be given by him to *D.* and *O.* for their indemnity, and his, *B.'s*, security; and that *D.* and *O.* were to hold the judgment, in trust, for *Bronson*. That

[ * 420 ]

they *acted as agents of *D. R.*, and as trustees of *B.*, in renewing the notes and endorsements, &c. That *D.* and *O.* considered themselves responsible as endorsers, and assigned the judgment to *B.*, in consideration of his releasing them from their liability as endorsers of the note.

*Deforest*, who was a witness, denied any notice of the *protest* of the note, and said, that being repeatedly applied to, and threatened with a suit, they, *D.* and *O.*, offered to assign the judgment to *B.*, on being released as endorsers, which was done.

*Bronson*, a witness, stated, that the defendant had paid to him the amount of the notes endorsed, except about 500 dollars, and had, on the 1st of *August*, 1814, given the witness a judgment bond for 4,044 dollars and 37 cents, as security, on which judgment was entered up, and held as security for the balance; and that he assigned the judgment against *D. Reed* to the defendant, on the 8th of *September*, 1814, in consideration of his having assumed and secured the note of *D. R.*, as above stated.

*Riggs*, for the plaintiff.

*Slosson*, and *Sedgwick*, for the defendant.

*April* 3d.

THE CHANCELLOR. There are two points to be considered in this case :—

1. Whether the judgment assigned to the defendant was, at the time, a valid and subsisting judgment, which he was entitled, in equity, to enforce. And, if so, then,

2. To what extent was he entitled to use it, and how far is it to be considered as satisfied by sales under it.

1. The judgment was given, as *Deforest* states, for the indemnity of *Deforest* and *Osborn*, as endorsers for *David Reed*, on a note for 4,000 dollars, given by him to *Isaac*

[ * 421 ]

*Bronson*. The note was repeatedly renewed with the *same endorsers, and the last note on which *D.* and *O.* were en-

324

dorsers, was payable on the 8th of *January*, 1814.· It was not paid, and due notice of non-payment was not given to those endorsers. This fact of the want of due notice from the holder may be taken· as sufficiently established. It is then contended, that *D.* and *O.* being no longer responsible, the consideration of the judgment ceased, and it ought not to be deemed in force. But, in answer to this, it is said· there are ·circumstances which go to show that *Deforest* and *Osborn* are not, in equity, entitled to set up the want of notice, even if they were, in strictness of law, discharged. It is to be inferred, that. they knew that the note in question could not have been paid when it fell due, because they had in their possession other notes of *Reed*, which were intended by him to meet it, and which they refused to endorse, and because they had, all along, acted as the agents of *Reed* in the negotiations attending the renewal of all the preceding notes. But whether they had this knowledge or not, it was not the notice that the law required, and they were entitled to stand upon their legal rights. If, however, they were not duly fixed as endorsers, yet *D.* and *O.* might, at any time, waive the want of due notice, and take up the note. This every endorser may do, and if he promises· to pay under a knowledge of the defect of notice, he is still bound. *D.* and *O.* did not pay, or promise to pay; but they did what was tantamount. With the knowledge of the protest of the note, and of the want of notice, and after they had considered themselves exonerated, on strict legal grounds, as endorsers, they assigned to *Bronson*, the holder of the protested note, the judgment given to them for their indemnity as endorsers, and they assigned it, as they state, in their assignment, "in consideration of being released from their endorsement of the said note." This was, in effect, a waiver of the *want of notice, and an admission that they were liable as endorsers. It is so reasonable, under the circumstances of this case, that the holder should not be deprived of the security resulting from their endorsement, and the judgment given to support it, that I feel inclined to consider the fact of the assignment as evidence of a promise to pay, and a promise fulfilled by means of the assignment. None of the parties to the note or the judgment can object that the judgment is made to answer for· the payment of the note which *Reed* gave, and *D.* and *O.* endorsed. In the case of *Maure* v. *Harrison*, (1 *Eq. Cas. Abr.* 93. *K.* 5.) and which was cited in 1 *Johns. Ch. Cas.* 129., a bond creditor was held entitled to the benefit of any collateral security given by the principal debtor to the person who became his surety to the creditor. It is extremely just that the judgment here should be so applied : the act was not done in fraud of the plaintiff;

*1817.*

*Phillips*
v.
*Thompson.*

[ * 422 ]

1817.

PHILLIPS
v.
THOMPSON.

and he has no equity to set up against any waiver by these endorsers of the want of notice. They had a right to pay the note and resort to the judgment for their indemnity. They had an equal right to assign the judgment to the holder, and obtain their discharge in that way, if they thought proper. They were dealing with their own rights, and the plaintiff has no ground to complain of the transaction.

I have not placed any reliance on the trust set up by the defendant, though *Bronson* may have considered the judgment taken by *D.* and *O.* as taken for his benefit, yet he admits there was no agreement between him and them on the subject, and *D.* states, expressly, that the judgment bond was taken on the account, exclusively, of *D.* and *O.* as endorsers, and for their indemnity. The bond and warrant speak that language, and no other; and I doubt very much whether parol evidence is alone sufficient to raise a trust, in opposition to the language of the instrument. (*Fordyce* v.

[ * 423 ] *Willis*, 3 *Bro. Ch. Cas.* 577.) *There is, indeed, an equivocal expression in the assignment, which might afford color for the inference of such a trust, but that is not sufficient when we consider the positive testimony of *D.*, and the admission that *D.* and *O.* made no such agreement when they took the bond. They took it on their own account, without any intention or knowledge of being trustees.

2. The next point respects the use which the defendant is entitled to make of that judgment.

It was given for a specific purpose, and to that purpose, exclusively, it ought to be applied. It is held only to secure the payment of the note which fell due on the 8th of *January*, 1814. The defendant admits, that there have been large sales of the property of *D. Reed* under that judgment, and under a subsequent judgment of the defendant against *D.* and *H. Reed*, and which last judgment was given to cover all the extensive responsibilities of the defendant. The sales, by virtue of the executions under both judgments, were made on the 25th of *November*, 1814, and the defendant, in his further answer, admits, that the sales which took place at that time, were under both judgments, and that the money raised amounted to 2,434 dollars. The sales were under both judgments indiscriminately; but as the judgment assigned to the defendant was the elder judgment, and given for a specific object, he ought to have applied the moneys so raised to the discharge of that judgment. If he were to be permitted to sell under both judgments, without discrimination, and then to apply the proceeds to his responsibilities at large, the elder judgment might be diverted to purposes foreign from its object, and be made a mask to cover claims,

over which an intervening encumbrance has a preference. The fair and just rule, in this case, will be, to satisfy the judgments out of the proceeds of the joint sale, according to the order of priority, and then each encumbrance *will have its due force and effect.   The defendant has raised, under the first judgment, 2,434 dollars, provided all the moneys, raised by the indiscriminate sales under both judgments, be applied to that judgment.   Whether the moneys have been so credited or not, they ought to be, and the judgment assigned be held to answer only for the residue of the 4,000 dollars with interest, after crediting the 2,434 dollars, from the time of the sale.   I do not perceive the propriety of going further, or of interfering with the moneys previously raised under the second judgment, or of requiring the note to be actually paid up by the defendant, before he collects the amount of it.   The judgment was taken by *Bronson*, and assigned by him to the defendant, as a satisfaction of the note which the defendant, as prior endorser, took up, and the defendant gave a judgment bond to *Bronson* for the whole amount of it.

Whether there will be any property left to satisfy the plaintiff's mortgage after the residue of the debt due to the defendant is raised, cannot be known.   The defendant, however, is entitled to go on and raise it; and I shall, accordingly, dissolve the injunction, so far as to allow the defendant to collect the balance due him, as aforesaid, unless the plaintiff shall elect to pay that balance, and take an assignment of the judgment.

Decree accordingly.