# Robertson *against* Stewart.

A, the payee and indorser of a note made by B, for the accommodation of C, is a competent witness in an action by B, against A, who guaranteed the payment of the note by C, at maturity.

The witness' anticipation that the amount to be recovered in such action will be applied to discharge his liability on the note, does not affect his competency.


ERROR to the common pleas of *Alleghany* county.

*Assumpsit* by Hugh Robertson against William Steward.

The plaintiff filed the following statement of his cause of action: "One James Shaw was indebted to a certain Aaron Hart in the sum of 988 dollars, for which debt the said James gave his promissory note, which was discounted at the office of discount and deposit of the bank of the United States in Pittsburgh.    The said Hart, after two or more renewals, declined renewing the said note again, and said it must be paid.    The said James then gave to the said Hart a note of the plaintiff, for the sum of 988 dollars, payable to the said

[Robertson v. Stewart.]

Aaron Hart, or order, ninety days after date; (there being no debt
due from the said Robertson to either the said Hart or Shaw,) which
note was taken in the place and stead of a note from the said Shaw
to the said Hart, to be endorsed by the said Hart to the said bank,
and discounted in the said office, and by way of renewal of the same
loan, and which was done accordingly. And when this note was
running to maturity, the said defendant told the said Hart that he
must renew the same once more; and then and there promised and
engaged, that if he did renew the same again, by procuring the said
plaintiff to draw a new note for the same amount, and endorse the
same, provision would be made to meet it at maturity; and that he,
the said Stewart, had funds, and would pay the same when it should
become due, and would have funds in his hands for that purpose;
all of which the said Stewart requested the said Hart to tell the said
plaintiff, which he did accordingly. And the said plaintiff, in con-
sideration thereof, at the special instance and request of the said
William Stewart, agreed to renew the said note; and afterwards, to
wit, on the 17th of December 1830, by giving his note payable to
the said Hart, and discounted at the said office, did renew the same;
and the said plaintiff, in fact, saith, that the said William Stewart
had funds of the said Shaw in his hands to meet the same when it
become due. Yet the said William Stewart did not pay the same,
or any part thereof, but hath wholly neglected and refused so to do;
but the same was paid when due by the said plaintiff. And that the
said defendant, by reason of the premises, is justly indebted to the
plaintiff in the sum of 988 dollars, besides interest from the time the
said note became due, which he believes to be due from the defend-
ant to the plaintiff."

Aaron Hart was produced as a witness on the part of the plaintiff,
and it being agreed that his testimony should be heard, and that the
court should then decide as to his competency, the said Aaron
Hart was sworn as a witness in the said cause; and testified that a
lot of molasses, the property of the witness, was sold by Jesse Hart,
of Cincinnati, to a certain James Shaw, and sent on here; when it
arrived, he wanted witness to take a note for it; the said James Shaw
and the witness adjusted the proper amount, and Shaw gave the
witness a note. Witness got the note discounted in the branch
bank, and got the money for it. When the note fell due it was re-
newed, the witness giving his check for the proceeds. When that
came around, Shaw said he could not meet it, and it was renewed
again; when the note again fell due, Shaw told the witness he could
not lift it. Witness told Shaw he must lift it; it ought to have been
paid at first. Witness told Shaw he would not renew it; if the note
had to be protested let it be so. Shaw called on the witness again
the same day, and brought him Hugh Robertson's (the plaintiff's)
note, payable to the witness for 988 dollars. Witness endorsed it,
and Shaw took it away and put it in bank; next day the witness
gave a check for the amount. The check was given to Shaw, as ap-

pears by the bank book; it went to lift the other note. Before Robertson's note became due, William Stewart, the defendant, met the witness in the street, and got talking about the note; witness told him he would not renew it again, it must be paid; it ought to have been paid long before. Stewart said the witness would have to renew it, and it would be met. This is all the witness recollects of what Stewart said at that time; he was speaking of this note. Witness does not know if Robertson or Shaw brought the note again after the first note; he gave the check to Robertson; but does not know that Stewart or Shaw paid any thing towards it. Witness thinks Stewart knew all about the note. They were talking about the transaction; he said the witness must renew the note, and it must be met. Witness mentioned this to Robertson the first time he saw him; after witness informed Robertson of this it was that he renewed the note. Witness does not know whether he would have renewed the note or not; he had told Robertson he had better look out; he said he was not afraid, he could get goods of Shaw. This was before Shaw had assigned; while his store was open. They had a conversation at Stewart's the same evening, after they had a conversation with Shaw; Stewart said Shaw had just gone out of there. Robertson and Stewart were talking about the order; Robertson told Stewart that Shaw had refused to give him an order on Stewart for the note; that Stewart did not owe him a cent. His answer was, that Shaw had been there, and had just gone out; he had just been giving him some money, the amount, the witness thinks, small.

Robertson had sent for Shaw, and told him that Stewart said if he would give an order on him he would pay the money. Shaw said Steward did not owe him any thing. About the 1st of November 1830, the witness took teas down, consigned to Stewart, from Shaw's store—twenty chests young hyson, and twenty half chests, containing two thousand two hundred and sixty-four *pounds in all.*

On cross-examination, the witness stated that the note was reduced to 650 dollars; Robertson drawer, and witness endorser. Robertson told the witness he had got a bale of muslins from Shaw, that enabled him to reduce the note to 650 dollars. Robertson told the witness he could get goods for the whole of it. His impression is, they were got between the first note of Robertson and when it became due. Robertson told the witness that Stewart had told him, that if he could get Shaw's order he would pay the note. Had frequent conversations that they would get Stewart to interfere. Shaw said he had got Robertson's note, knowing his own would not pass in bank. Witness understood he had borrowed it.

The witness also testified as to the time of the report of Shaw's insolvency.

The counsel for the defendant, after the examination of the different witnesses, and the testimony being closed on both sides, requested the court to reject the testimony of Aaron Hart; on the ground, that if there be a recovery on the promise testified to by

[Robertson v. Stewart.]

Aaron Hart, he will himself be the beneficial owner of the verdict and judgment, and so to instruct the jury. Whereupon, the court did decide that the said Aaron Hart was an incompetent witness, and instructed the jury to reject the testimony of the said Aaron Hart given in the said cause. To which decision, and instruction given to the jury, the counsel for the plaintiff did except, and requested the court to seal their bill of exceptions.

Error assigned.

The court erred in deciding, and so instructing the jury, to reject the testimony of Aaron Hart.

*M' Candless*, for plaintiff in error.

*Biddle*, for defendant in error.

The opinion of the Court was delivered by

GIBSON, C. J.—Separated from its immaterial circumstances, the case is this: The witness is the payee and indorser of Robertson's note, discounted in payment of his previous note drawn to oblige Shaw; and in an action by Robertson on Stewart's guaranty, that Shaw would pay the note at maturity, the witness was excluded for a supposed interest in the money expected to be recovered; which, it was supposed, would necessarily be applied to satisfy the note and extinguish the witness's endorsement. It has, indeed, been held, in Phillips *v.* Thompson, 2 *Johns. Ch. Rep.* 418, that the holder is entitled to the benefit of collateral securities given by the maker to the *endorser*. In such a case, however, the holder is an assignee of the indorser, and, in equity, a purchaser of all his securities; a consequence not predicable of the payee, who, being in no respect an assignee, cannot claim the benefit of a guaranty given, as here, to the maker himself. He is a purchaser of nothing but the maker's responsibility. The anticipation of a beneficial application of what should be recovered was calculated to generate a bias which goes to credibility but not competency. The interest which disqualifies is fixed, independent on adverse control, and productive of an advantage which the law would enforce.

Now, suppose that Robertson, having recovered, should refuse to apply the proceeds in discharge of the note, what means would the witness have to compel him? He could sue him as the maker; but he could not stop the money in court to answer his action. The guaranty of Stewart was made for the benefit, not of the witness, but of Robertson, who might, had he pleased, have given the witness an interest in it by marking the action on it to his use; but till he did so, the action and every thing recoverable by it would belong to Robertson himself. He alone could control it; and, in the mean time, the recourse of the witness to him would be neither the better nor the worse for his recovery. The sole advantage which the witness could expect from it would be an increase of substance on the part of Robertson to answer his action; which, however, has

never been deemed sufficient to disable a creditor from testifying for his debtor. The witness, therefore, ought not to have been rejected.

Judgment reversed, and a *venire de novo* awarded.