Solomon K. Eastman & another *vs.* David Foster & others.

Mortgage deed, given by the principal maker of a promissory note to his surety on the note, conditioned that the principal will pay the note and save the surety harmless, creates a trust and an equitable lien for the holder of the note ; and the surety holds the mortgaged property subject to such trust and lien, even after the holder's claim on him to pay the note is barred by the statute of limitations, and though the property, as between mortgagor and mortgagee, may have become absolute by foreclosure.

The trust created by such mortgage is not secret; and when the mortgage is recorded, it gives constructive notice of the trust to all creditors and purchasers. so that they cannot, by attachment or grant of the mortgaged property, take it discharged of the trust ; and the assignment of the mortgagor's estate, under the insolvent law of 1838, *c.* 163, will not, by virtue of § 5 of that statute, defeat the trust

Eastman & another *v.* Foster & others.

A building erected on the land of one who has given a bond to the builder to convey the land to him, on his paying a certain sum within a certain time, is not the personal property of the builder, within the meaning of the Rev. Sts. *c.* 74, § 5, so as to require a mortgage thereof, given by the builder to the owner of the land, to be recorded in the town clerk's office, in order to render it valid as against the creditors of the mortgagor; nor so as to cause a forfeiture of the building to the mortgagee, under Rev. Sts. *c.* 107, § 40, in sixty days after breach of the condition of the mortgage.

Where a surety on several notes takes a mortgage from the principal promisor, conditioned to pay the notes and save the surety harmless, and thereby holds the mortgaged property in trust for the holders of the notes, and he remains liable on only one of the notes, and the property of the principal is assigned under the insolvent law of 1838, *c.* 163, the mortgaged property, if sufficient to pay all the notes, is to be applied to the payment thereof, and the surplus, if any, is to be distributed among the general creditors of the mortgagor. But if the mortgaged property be insufficient to pay all the notes, the surety is first to be indemnified therefrom, and the surplus is to be paid to the holders of the notes, *pro ratâ.*

SHAW, C. J.    The present is an application to the summary jurisdiction of this court, as a court of chancery, under the provisions of § 18 of the insolvent law of 1838, *c.* 163, by which the court are authorized, upon bill, petition, or other proper process, of any party aggrieved by any proceedings under that statute, to hear and determine the case, and to make such order or decree therein as law and justice shall require.

This application is by petition, by Solomon K. Eastman and Frederick A. Palmer, as assignees of Ephraim Cushman and John R. Cushman, of Amherst. It appears that the proceedings were commenced on the 24th of March 1843, by the voluntary application of the insolvents to the judge of probate for the county of Hampshire, whereupon a warrant was issued and the usual proceedings were had ; and on the 8th of April following, the petitioners were chosen assignees, and a regular assignment of the estate of the insolvents was made to them by the judge of probate.    The regularity of the proceedings is not questioned But the matter presented for the consideration of the court arises from the claims of certain creditors to have an equitable lien upon a part of the property of the insolvents, and who insist that such property ought to be first applied, in virtue of such lien, to the satisfaction of their debts, and that the balance only should go to the general creditors.

The facts, as they are stated in the petition and admitted by

the answer, or by the agreed statement of facts, appear to be these :

Several years ago, five promissory notes were made, as hereafter stated, by these debtors, signed jointly and severally by themselves as principals, and by the said Solomon K. Eastman, now one of the said assignees, as surety, for the payment of various sums, to divers persons, as follows :

Luther Henry, $500 ; since paid.

December 21st 1835. David Foster, $300 on demand, with interest.

November 17th 1835. Daniel Dickinson, $456, with interest annually.

September 9th 1835. Trustees Ministerial Fund of the North Parish of Am herst, $325. September 21st 1836. Same, $250 — $575 — both on demand, with interest annually.

It appears that interest was paid annually on these notes, to 1841 or 1842; and on the note to Daniel Dickinson, a payment of $200, generally, was made on the 19th of January 1843.

It does not distinctly appear by whom these payments were made ; but as Eastman, who stands in the double capacity of *surety on these notes and assignee under the insolvency*, admits that he is liable as surety on the note to Daniel Dickinson, and denies that he made any payment on the other notes, or any acknowledgment of his liability within six years, and claims to be discharged from any personal liability, by the statute of limitations, and as this is not contested on the other side, we take it as a fact that he was legally liable, as surety and joint and several promisor, for the payment of the note to Dickinson, and is discharged from his personal liability for the other notes by the statute of limitations.

It further appears, that after the making of all the said notes, and whilst the said Eastman was liable upon them, as surety, to wit, on the 3d of April 1837, the said Ephraim and John R. Cushman mortgaged to the said Eastman a certain farm, (described,) also the paper mill and machinery, with all the appurtenances thereto belonging, standing on the land of the said Solomon K. (mortgagee.) The condition of this mortgage, after reciting all the above described notes, signed by said Eastman, as surety for the said Cushmans, provides that if the said mortgagors " shall pay said notes, and every way indemnify and

save harmless the said Solomon K. from all trouble and expense, then this deed to be void; otherwise, in power." This mortgage was recorded on the 1st of May 1843. In the year 1835, the said Eastman gave to the said Cushmans a bond for a deed of the land on which the above mentioned paper mill was erected by them, upon their paying to him a certain sum in three years; and in 1838 the time of payment was extended to 1841, by an indorsement made on the bond by said Eastman. But no part of the sum, mentioned in the bond, was ever paid by the said Cushmans.

At the time of the commencement of the proceedings in insolvency, the notes in question were due, except the one to Luther Henry, which had been paid.

Such being the relation in which the said Solomon K. Eastman stood, on the 20th of May 1843, he petitioned the judge of probate for license to sell and dispose of the mortgaged premises, and apply the proceeds to the payment of the balance due on the note to said Daniel Dickinson, and to place the residue of said proceeds in the general fund for the payment of creditors.

At the same time, May 20th 1843, the said trustees of the North Parish in Amherst and the said David Foster presented a petition, in like manner, to the judge of probate, praying that the said mortgaged premises might be sold, but that the proceeds of such sale should be applied to the payment of their notes respectively, equally with that of the said Daniel Dickinson. They relied on the ground that the mortgage of the property to the surety, conditioned to pay the debt and indemnify the surety, was not simply for the indemnity of the surety personally, but constituted the surety and mortgagee a trustee for the creditors enumerated in the condition, and created an equitable lien for the security of the notes recited and described in the condition; and that although the right of action against the surety himself was barred by the statute of limitations, still the debt remained in force, as a legal and equitable claim against the mortgagor, and thereby that such equitable lien was not discharged

Upon these petitions, after notice and due proceedings thereon, the judge of probate decided that the property should be sold, and the proceeds applied to the payment of the notes of Foster and the trustees, as well as those of Dickinson, and the balance only, if any, after paying the four notes, to be carried into the general fund.

From this decision an appeal was claimed; but there being no provision by law for an appeal, this original petition was filed, in nature of an appeal, for direction in the premises.

Several questions have been argued, and considered by the court.

1. The court are of opinion that the mortgage deed made by Ephraim and John R. Cushman, the principal debtors, to Eastman, the surety, conditioned to pay the notes and indemnify him, did create a trust and equitable lien for the holders of the several notes; that the mortgagee held the property subject to such trust; and that it created an equitable lien thereon, for the security and payment of the specified debts.* As such equitable lien attached to the property in the hands of the mortgagee, in the nature of a trust, it would remain so attached to the property in the hands of an assignee of the mortgage, who would have notice of such trust, in the instrument itself. We think also it would follow the property into the hands of the original mortgagor, if released to him before payment of the

---

* On this point, the counsel for the *respondents* cited *Wright* v. *Dame*, 22 Pick. 55. *Crane* v. *March*, 4 Pick. 131. *Maure* v. *Harrison*, 1 Eq. Cas. Ab. 93. 1 Story on Eq. §§ 502, 638. *Evertson* v. *Booth*, 19 Johns. 486. *Bank of U. States* v. *Stewart*, 4 Dana, 27. *Heath* v. *Hand*, 1 Paige, 329. *Keyes* v. *Brush*, 2 Paige, 311. *Kip* v. *Bank of N. York*, 10 Johns. 63. *Homer* v. *Savings Bank*, 7 Connect. 478. *Ware* v. *Otis*, 8 Greenl. 387. *Russell* v. *Clark*, 7 Cranch, 69. *Phillips* v. *Thompson*, 2 Johns. Ch. 422.

The counsel for the *petitioners* cited 2 Story on Eq. §§ 1195, 1205, 1206, 1217, 1223, 1228, 1229. *Prevost* v. *Gratz*, 6 Wheat. 481. 2 Sugd. Vend. [Amer. ed. 1836,] 73, *note.* *Payler* v. *Homersham*, 4 M. & S. 423. *Kauffelt* v. *Bower* 7 S. & R. 64. *Cheesebrough* v. *Millard*, 1 Johns. Ch. 414. *Bayley* v. *Greenleaf*, 7 Wheat. 50. *Jewett* v. *Bailey*, 5 Greenl. 87. *Winn* v. *Bowles*, 6 Munf. 23. *Eppes* v. *Randolph*, 2 Call, 125. *Union Bank* v. *Edwards*, 1 Gill & Johns. 346. *Moore* v. *Holcombe*, 3 Leigh, 597. *Wiggin* v. *Dorr*, 3 Sumner 418 *Craythorne* v. *Swinburne*, 14 Ves. 170.

notes; and also into the hands of any grantee of the mortgagor, who should take it with actual notice of the trust.

2. The court are of opinion that it is no answer to the equita ble claim of the holders of these notes, that their personal remedy by an action at law against the surety to whom the mortgage was made is barred by the statute of limitations.* It is no discharge of their equitable lien on the property. The debt remains in force, and the debtor is bound to pay it. The effect of the mortgage was, in equity, to pledge the property in the form of a hypothecation, to the surety, for the payment of the mortgagor's debt; and the pledge is not redeemed, nor the equitable lien upon it discharged, until the debt is paid. The court are therefore of opinion, that the trustees of the North Parish Ministerial Fund, and the said David Foster, respectively, though they are barred of their personal remedy against the surety, are yet entitled to their equitable lien; and as the property has never been transferred to a purchaser without notice of the trust, but, on the contrary, has always remained in the hands of the original mortgagee, they still have their lien on the trust property and its proceeds.

3. But it was argued, that the assignment of the whole of the property of the insolvents, by force of the statute of 1838, *c* 163, for the benefit of all the creditors, is in the nature of an acquisition of a purchaser without notice. We think there is no ground for this argument, in fact or in law. The argument is founded on the provision, in § 5 of said statute, that the assignment shall vest in the assignee all the property which the debtor could convey, or which might be taken by a creditor. The argument assumes, that if this is held to be a trust, it is a secret trust, and that a creditor or purchaser would take the property discharged of any such trust.

What would be the effect of an assignment, under the insolvent law, upon real estate, of which the insolvent had given a

---

* The *respondents'* counsel cited, on this point, *Thayer* v. *Mann*, 19 Pick 535. *Heyer* v. *Pruyn*, 7 Paige, 465.

The *petitioners'* counsel cited *Drewry* v. *Barnes*, 3 Russell, 94. *Waters* v *Riley*, 2 Har. & Gill, 305. *Decouche* v. *Savetier*, 3 Johns. Ch. 216.

prior unrecorded deed, either absolute or conditional, supposing such prior conveyance to be actually known to the assignees, before the commencement of the insolvent proceedings, but not known to other creditors, may be a doubtful question. The general rule is, that if a purchaser or attaching creditor has actual notice of a prior conveyance, his conveyance or attachment will be subject to such prior mortgage or grant; but if he has no such notice, his attachment or grant will hold the estate exempt from the operation of the prior unrecorded deed. In the case supposed, some creditors attaching the property would obtain liens subject to the prior unrecorded deed, and other creditors a lien exempt from it, as they should or should not, respectively, have actual notice of such deed; and therefore, how assignees, taking for the use of all creditors, would take in such case, is a question requiring much consideration, and on which we give no opinion.

But this case is very different, and does not raise that question. This mortgage was recorded; and whether regarded as a trust or a hypothecation, the fact was on record, and this was constructive notice to all creditors and purchasers. Whoever should have occasion to investigate the debtors' title would find on record a deed, by which that estate was expressly mortgaged to pay these notes. The mortgage was not, indeed, made directly to the holders, but to one bound, as surety, to the holders, having a direct interest to see that the property should be applied to the payment of these notes, and regarded in equity as trustee for them. No one would have a right to act on the belief that the property was discharged, until the debts were paid; which is all the legal and constructive notice that a direct mortgage to the holders of the notes would give them. If therefore such an instrument did give an equitable lien on this property, by operation of law, to the holders of these notes, the registration of the instrument, conformably to law, gave full notice of it to all creditors and purchasers.

If it be said, that as to the mill erected by the mortgagors on the land of the mortgagees, it was a mortgage of personal property, that the interest of the mortgagor was a chattel inter

est, and therefore, to make it effectual against creditors and purchasers, it should have been recorded in the town clerk's office, we think there is a good answer.

When it is said that the mill, with the appurtenances, erected by the Cushmans on the land of Eastman, was personal property, it is true to a certain extent, but not true absolutely. It was *like* personal property; it was an interest in the buildings, but not an ownership of the soil. The true nature of that interest seems to have been this: The buildings were erected under an agreement with the owner of the soil to convey the land at a certain price, within a limited time. They were, in truth, fixtures, and constituted part of the realty. The interest of the builders was a right to obtain a title to the soil, and thus unite the fixtures with the fee. It was therefore an equitable interest in the realty; not a pure ownership of the buildings as chattels. It would not therefore have been competent for a creditor, pending this agreement, to attach such buildings on mesne process, and take them in execution, as chattels, on a *fieri facias*, sell them in four days, and deliver them to a purchaser, to be removed. They were not therefore personal property, in the strict sense, nor in that sense in which personal property is regarded as subject to the process of law for the payment of the owner's debts, and for the exemption of which from attachment, when mortgaged, the mortgage must be recorded in the town clerk's office. It was only an equitable interest in the realty, which creditors could reach through the medium of the mortgagee, who was at the time owner of the soil, but bound to convey it on terms. This was the right of the debtor himself, and the rights of his creditors could not go beyond it. But in thus seeking their rights through the mortgagee, as a trustee, the creditors must take them, subject to the prior equity of the holders of the notes, for whose security, in the first instance, this mortgage was made. The same document, which manifests the trust on which they rely, does show such prior equity, and as notice to them, therefore, need not be recorded.

4. But a fact considerably relied upon in the argument was, that as to the mortgage of the mill and appurtenances, there was

a forfeiture by the non-payment of the notes ; and as the prop-erty was in the actual possession of the mortgagee, being in fact on his own land, the right to redeem was foreclosed, by force of the Rev. Sts. *c.* 107, § 40, in sixty days ; and thus the mill, &c. became the absolute property of the mortgagee, by the union of the personal property in the buildings with the realty. This argument having been strongly relied on as a bar to the claims of the holders of the notes, it is proper to consider it.

In the first place, we think an answer may be made to this, substantially like that made under the last head ; that this was not a pure mortgage of personal property, to be redeemed or forfeited in the same manner as ordinary chattels, mortgaged by the owner ; it was rather an equitable interest in the realty, arising out of the contract which the owner of the soil had made with the person who was to erect the buildings, stipulating the terms on which such builder should have a legal title, and thus avail himself of the benefit arising from the outlay upon the buildings. It was this equitable interest which was hypothecated for the indemnity of the surety on the notes, who happened to be the same person who owned the land. Such an interest, we think, would not be foreclosed, by force of the statute, by a mere formal breach of the condition ; because it is not within the terms or the equity of that statute.

But a more complete and satisfactory answer in the present case is, that if we are right in considering that, in equity, Eastman held this mortgaged property as a trust for the security of the notes on which he was surety, it could not be discharged from that equitable lien, merely because, as between the debtor and such surety, the pledge had become absolute in his hands, which was at first conditional. Had he himself paid the notes, then unquestionably he would have a right to hold the property, at least until he was fully reimbursed. But not having paid the notes, even if the legal title to the property had been absolute in his hands, it was still an estate charged with the equitable lien for the holders of the notes ; and even if he had taken any legal measures to foreclose the right of redemption, they would have been measures taken by a trustee, and so deemed to be

taken for the benefit of the *cestui que trust*, and not for his own.

Indeed, this is the view which the mortgagee himself seems to have taken of his rights, and of the relation in which he stood, by his petition for leave to sell the property and apply the proceeds, first to pay the note for which he remained liable, and to carry the balance to the credit of the general fund.    If he had become the absolute owner of the property, without redemption or liability to account, he had no occasion to present any such petition.    On the contrary, he considered, and we think correctly, that the property did remain chargeable, to some extent, with the lien for the payment of the notes for which it was pledged, to wit, for payment of the note to Dickinson, for which he remains liable ; but he insisted that it no longer remained liable for the notes on which he was exempted from liability by the statute of limitations; a point which we have already considered.

5. One other question may arise in the case, but it depends upon a further question, namely, whether the whole of the mortgaged property is of sufficient value to pay the whole amount of the four notes.    If it is, then, according to the views already stated, the opinion of the court is, that the proceeds ought to be so applied.    But if it is insufficient, then the question is, whether Eastman, the surety, mortgagee and assignee, shall be allowed first to pay in full the amount of Dickinson's note, for which he is liable, and the other three *pro ratâ*, or whether all shall be paid *pro ratâ*, so as to leave him liable, without indemnity, for the payment of the balance of Dickinson's note.

We think it quite clear, that so far as the creditors stand alike, in their legal and equitable rights, it would not be competent for the mortgagee, by any voluntary act of his own, to give a preference to one over another.    We think he could not, by voluntarily paying one in full, apply the proceeds to indemnify himself, leaving the others unpaid.    So if all were barred by the statute of limitations, he could not create a preference by waiving the statute as to one, insisting on it as to the others.

But the question is, whether, if he is discharged from one,

and held liable on others, by operation of law, without any act or voluntary forbearance of his own, he is not entitled first to apply the fund so as to indemnify himself, and hold the balance only for the other creditors.   For instance ; supposing the original security had been taken, as it was, to indemnify him against five notes, suppose that two of them were attested and three not attested by a witness, and all should stand thus, seven years. On the unattested notes he would be discharged by the six years' bar of the statute of limitations ; on the attested notes, not.

I am inclined to think he would have a right to be fully indemnified, by paying in full the notes for which he is thus liable. The original and primary object of taking the securities was to indemnify the surety.   For this purpose he had a legal right to the property, which might have been enforced at law by a foreclosure.   An indemnity against the whole was an indemnity against each part ; so that when Henry's note was paid, the whole of the property was applicable to the other four.   Their claims, as amongst themselves, were equal, and it is not on their account that Dickinson's note is entitled to payment in full. But it is on account of the surety, who appears to me not only to have a superior equity, but to stand upon the ground of another rule of law, viz. that when two or more have equal claims in equity, and one has a legal title, the legal title shall prevail

*Dickinson & Davis,* for the petitioners.

*Delano,* for the respondents.