# SUPREME JUDICIAL COURT

FOR THE

## COUNTY OF BRISTOL, OCTOBER TERM 1864, AT TAUNTON.

PRESENT:

Hon. GEORGE T. BIGELOW, Chief Justice.
Hon. CHARLES A. DEWEY,
Hon. THERON METCALF,
Hon. EBENEZER R. HOAR, } Justices.
Hon. REUBEN A. CHAPMAN,

---

New Bedford Institution for Savings vs. The President, Directors and Company of the Fairhaven Bank & others.[*]

If the maker of a promissory note gives a mortgage as security to an accommodation indorser, whose liability upon the note afterwards becomes fixed, the indorsee, after the insolvency of the maker and indorser, is entitled to have the mortgage assigned to him, although the condition of it is only for the security of the indorser, and not to pay the debt. If, however, the indorsee has proved the note against the several estates of the maker and indorser in insolvency, and by his vote has secured the discharge of the indorser, he cannot afterwards, upon withdrawing his proof, compel an assignment of the mortgage to himself.

BILL IN EQUITY, alleging that the plaintiffs are creditors of Edmund Allen, an insolvent debtor, to the amount of seventeen

---

[*] This case was argued in October 1863.

hundred dollars and upwards, and of Sylvanus Allen, an insol-
vent debtor, to the like sum, and that they have duly proved
their claims against the estates of both of said debtors; that on
the 10th of September 1859 Edmund executed to Sylvanus two
mortgages, with condition that "the said Edmund shall well
and truly hold the said Sylvanus harmless and indemnified of
and from all existing and all future indorsements and liabilities
which the said Sylvanus may make or assume within the term
of two years from the date hereof, for the said Edmund, and
shall well and truly pay and discharge all indebtedness now ex-
isting or which the said Edmund may incur to the said Sylva-
nus within the said term of two years;" that within the two
years notes were accordingly executed by Edmund and indorsed
by Sylvanus, which are now held by the Fairhaven Bank to the
amount of $12,300; by the Fairhaven Institution for Savings
to the amount of $4100; and by Isaac Daggett to the amount
of $1060; that said parties respectively proved their said claims
against the several estates of Edmund and Sylvanus, and there-
after, constituting a majority in value of the creditors of Sylva-
nus, signed their assent to his discharge, which he received
accordingly; that afterwards the said parties presented their
petition to the judge of insolvency, praying him to order the
assignee of Sylvanus to convey to them the legal title of the
mortgaged property, and to order the assignees of Edmund to
join with them in making sale of the same, so that they might
apply the proceeds towards the payment of their claims, and
then prove against the estates of the insolvent debtors any bal
ance which might remain; and that the judge of insolvency
passed a decree substantially granting this petition. The prayer
was, that an injunction might be issued restraining any action
under this decree, and that the decree might be annulled, and
for other and further relief.

The answer set forth that the notes held by the defendants
were inadvertently and improvidently presented and allowed
against the insolvent estates; and that as soon as the defendants
were advised of their rights under the mortgages they presented
a petition that the claims might be stricken from the lists of

debts proved in both cases, and the court so ordered; where-upon they presented the petition referred to in the bill; that the discharge of Sylvanus was granted long before the time when they had any knowledge of their interest in the mortgaged prop-erty; that the plaintiffs joined in the assent to the discharge without any expectation of receiving any portion of the mort-gaged property; that at the time when the discharge was granted neither the plaintiffs nor the defendants had any sus-picion that this property could in any way be made available to any of the creditors of Sylvanus, and the plaintiffs did not know of the existence of the mortgages; and that the plaintiffs' claim against Sylvanus arose out of indorsements by him for the benefit of James Freeman, and not for the benefit of Ed-mund.

The plaintiffs filed a general replication. And it was further agreed that the schedule of assets of Sylvanus included the mortgages from Edmund to him; that all the creditors, of any material amount, had proved their claims before the assents to the discharge were signed; that the defendants assented to the discharge before the plaintiffs did; that the president and secre-tary of the plaintiffs would now testify that in their opinion their corporation would not have assented to the discharge if the preferences now claimed by the defendants had then been set up, and that their action was then founded upon the appar-ent equality of the division of the whole property named in the schedule of assets among all the creditors.

The case was reserved by *Merrick*, J. for the determination of the whole court.

*T. M. Stetson*, for the plaintiffs. These mortgages were not to secure the payment of the notes, but to indemnify Sylvanus Allen. A security intended only to indemnify an indorser can-not by construction be diverted from his general creditors for the benefit of a few. See *Meed* v. *Nelson*, 9 Gray, 55; *Agawam Bank* v. *Morris*, 4 Cush. 99. These mortgages should be no charge upon Edmund Alen's estate until Sylvanus Allen's estate has paid something on his indorsements. See *Sumner* v. *Bachelder*, 30 Maine, 35. The defendants ought to stand in no

better position than Sylvanus himself. Their right is only through him. *Reed* v. *Norris*, 2 Myl. & Cr. 361. 1 White & Tudor's Lead. Cas. in Eq. (3d Amer. ed.) 143–172, and cases cited.

If the defendants had originally any right in the premises, they have lost it by their own act. They have controlled the choice of assignee and caused the debtor's discharge, by holding out an appearance of an equal division of his assets; and they ought not now to be allowed to avail themselves of the preference which they seek.

*J. C. Stone*, (*W. W. Crapo* with him,) for the defendants.

CHAPMAN, J. The order of the judge of insolvency which the plaintiffs by their bill seek to have annulled was made on the ground that the mortgages are not to be regarded simply as having been made for the benefit of Sylvanus Allen as indorser, but that they constituted him a trustee for such persons as might become holders of the notes, and that this equitable lien, being attached to the mortgaged property in the hands of Sylvanus, remained and bound the property in the hands of the assignee. The cases of *Eastman* v. *Foster*, 8 Met. 19, and *Rice* v. *Dewey*, 13 Gray, 47, are relied on as authority for this position. The plaintiffs do not deny the doctrine of those cases, and as it was there settled so recently, and discussed so fully, it cannot be considered as open to discussion here. But the plaintiffs contend that the present case is to be distinguished from them; because in both of those cases the condition of the mortgage was not only that the principal should indemnify the surety, but also that he should pay the debt; whereas, in the present case, it merely stipulates that he shall indemnify the surety, and makes no mention of the payment of the debt. But it is well settled by the authorities that the creditor has an equitable claim to the security, as well when the mortgage is given for mere indemnity as when the condition is added that the principal shall pay the debt. In *Moses* v. *Murgatroyd*, 1 Johns. Ch. 119; *Phillips* v. *Thompson*, 2 Johns. Ch. 418; *Ten Eyck* v. *Holmes*, 3 Sandf. Ch. 428; *Riddle* v. *Bowman*, 7 Fost. (N. H.) 236; and *Aldrich* v. *Martin*, 4 R. I. 520, the security was given

merely to indemnify the indorser, and yet the creditor was held to be entitled to it. The law is so stated in 1 Eq. Cas. Ab. 93, which is cited in several of the American cases. The equitable right of the creditor does not rest upon contract, but he is put upon the same equitable footing with a co-surety. The law has been long settled, and the distinction taken in the present case is novel.

Two cases in our own reports are said to give countenance to the distinction. In *Agawam Bank* v. *Morris*, 4 Cush. 99, the question arose whether the bank could prove its debt against the maker of the note in insolvency. It was contended that they had security in their hands, because the president of the bank, who had indorsed the note, had in his hands certain security which he had taken of the maker for his own indemnity. He testified that he held it merely for his own benefit. All that was decided was, that the bank might prove the debt. The reason given was, that the security was not one of which they could avail themselves, and therefore not one which they were bound to surrender. Why they could not avail themselves of it is a question not discussed in the case. It does not appear that the point raised in the present case was brought to the notice of the court. The other case is *Meed* v. *Nelson*, 9 Gray, 55. It arose upon the disallowance of a claim of the holder against the estate of the maker of a note, because an accommodation indorser had a mortgage for his indemnity. But it was held that, as the indorser might never be called upon, the mortgage might never become a charge upon the estate.

In this case the indorser has been called upon, and the holders of the notes seek to enforce payment of their debt against his estate, by calling on his assignee to sell the mortgaged property and apply it on the debt. We must assume, from the facts stated, that the indorser was made liable. It cannot be that if an indorser, who has been made liable by demand and notice, goes into insolvency, the mortgage taken by him for indemnity is thereby released. It ought to be held by his assignee for the benefit of his estate. But it was not taken for the general benefit of all his creditors, and its object was to indemnify his

estate from the payment of the particular debt. Primarily
therefore, it would seem to be the proper course to apply the
security to the payment of that debt, and thus leave the other
creditors of the indorser in the same condition as if the indorse-
ment had not been made. The proper course, then, would seem
to be, that the creditor should first petition, as he has done, to
have this security applied towards the payment of his debt, and
then make proof of the balance.

But it is objected on the part of the plaintiffs that the defend-
ants have forfeited their right to have this application made for
their especial benefit, because they first proved their debts, and
then made use of their position as creditors to vote for the dis-
charge of the debtor, and that they have thereby affected the
rights of the plaintiffs injuriously. As the claim of the defend-
ants consists of a mere equitable lien, they contend that it ought
to be discharged by any conduct of the defendants which thus
injuriously affects the plaintiffs. The court are of opinion that
this view of the matter is sound and equitable. The defendants
had a right to waive their equitable claim to the mortgages; for
the mortgages were not made to them, and they had never
assented to them. The other creditors could not therefore ob-
ject to the proof of their debts. Upon the proof being made,
the amount of their claims enabled them to control the choice
of an assignee, as well as the discharge of the debtor. It is the
latter fact only which is made the subject of complaint in the
plaintiffs' bill, and therefore the effect of the proof upon the
choice of the assignee is not to be considered in this case,
though it was alluded to in the argument.

But the fact that the defendants thus acquired the power to
control the vote of creditors on the question of the debtor's dis-
charge, and actually exercised that power, and procured the
discharge, must be considered as a material interference with
the rights of the other creditors. The discharge is doubtless
valid, because the defendants had rightfully proved their debts
and had a right to vote on the question. After they have done
this on the ground that they had no lien upon the mortgages, it
is not equitable to permit them to insist upon the lien, and thus

obtain a preference over the other creditors. The equitable considerations which favor the equal distribution of assets among creditors ought not to be set aside in such a case. On the contrary, we think the defendants should be bound by the position which they have taken.

But the defendants contend that the acts referred to were done by them in ignorance of the fact that they had a lien. It would be difficult to maintain the position that they had not, at least, constructive notice of the existence of the mortgages, because the mortgages must have been recorded in order to be made available to them; and the fact that they had not actual knowledge of the existence of the mortgages, or that they did not know what were their legal rights under them, is not material. But whatever their ignorance may have been, if they have ignorantly proceeded in such a manner as to affect the rights of other parties, the injurious consequences of their acts ought to fall upon themselves, and not be thrown upon others.

As the property is not yet distributed, there seems to be no reason why the defendants may not renew the proof of their notes, and share in the distribution of the assets equally with the other creditors. *Decree of the court of insolvency reversed.*