STEERE *v.* TREBILCOCK.[1]

1. NON-NEGOTIABLE NOTE—SUFFICIENCY OF ASSIGNMENT.
   The indorsement of a non-negotiable note by the payee to a third party, accompanied by a delivery of the note, constitutes a sufficient assignment to pass title to the instrument.

2. SUNDAY CONTRACT—VALIDITY.
   A contract made on Sunday is not void at the common law.

3. SAME—DELIVERY OF WRITTEN INSTRUMENT.
   The mere fact that a promissory note was delivered to an indorsee thereof on Sunday will not operate to defeat his title to the note.

4. PRINCIPAL AND SURETY—RIGHTS OF PRINCIPAL CREDITOR.
   Defendants gave their non-negotiable note to K., to indemnify him for any amount that he might be compelled to pay to obtain certain papers which were in the possession

---

[1] Rehearing denied March 12, 1896.

of the plaintiff. In order to secure the papers, K. obligated himself to pay plaintiff the full amount of the note, whereupon the papers were delivered to the defendants. Upon their refusal to pay the note, K. assigned it to the plaintiff. *Held*, that plaintiff could maintain an action on the note.

Error to Gogebic; Haire, J. Submitted January 29, 1896. Decided February 26, 1896.

*Assumpsit* by George S. Steere against William Trebilcock and John A. McLeod on a promissory note. From a judgment for defendants, plaintiff brings error. Reversed.

*Ball & Ball,* for appellant.

*Charles E. Miller,* for appellees.

LONG, C. J.  Prior to October 14, 1893, the city of Ironwood had voted certain bonds for public improvements, and was seeking to negotiate them. Mr. O. E. Karste had bargained with the city for the bonds, and had employed a firm of brokers in Chicago to negotiate them. The plaintiff had been employed by these brokers to procure and prepare a statement of the bonds, and the proceedings authorizing their issue, and to give his opinion, as an attorney, upon the question of their validity. These brokers failed to place the bonds, and the city of Ironwood negotiated with brokers in New York City to take them on the recommendation and favorable opinion of the plaintiff. The defendants were commissioned by the common council of the city—Mr. Trebilcock being the mayor—to obtain the bonds, and deliver them over to the New York brokers, and obtain a first payment of $25,000 upon them. For the purpose of completing such sale, the defendants were desirous of obtaining from the plaintiff the papers and documents which had been prepared on the subject of the bonds, and also his opinion on the question of their validity, in accordance with the arrange-

108 MICH.—30.

ment with the New York brokers. When the bonds were first turned over to Karste, he had arranged with the plaintiff for this examination, and had agreed with him upon a settlement of his services at the sum of $1,130. When defendants called upon Karste for the bonds and plaintiff's opinion, Karste informed them that plaintiff's charge was $1,130, and that he could get the papers and the opinion upon the payment of such sum; but he undertook, at defendants' request, to obtain the bonds and the opinion at a lesser figure. The defendants then agreed that, if Karste could procure the delivery of the papers and plaintiff's opinion, they would pay whatever sum Karste had to pay therefor, as it was not known at the time whether any reduction could be had or not. Karste demanded that the defendants give him their note for $1,130, saying that he did not think he could get any reduction. The defendants gave the note in question, with the understanding that, if Karste did not have to pay the total amount, they were to pay only such amount as he had to pay. This note is as follows:

"$1,130.          IRONWOOD, MICH., Oct. 14, 1893.

"On demand, after date, for value received, we promise to pay to the order of the Bank of Ironwood eleven hundred thirty dollars, at the People's Savings Bank of Ironwood, with interest at —— per cent. per annum after ——, until paid.

"Due ——.

                              "WM. TREBILCOCK.
                              "JOHN A. McLEOD.

"This note is to be paid when Coffin & Stanton make first payment on bonds."

Karste, upon obtaining the note, gave to the defendants a letter to present to the plaintiff, as follows:

                    "IRONWOOD, October 14, 1893.
"GEORGE S. STEERE, ESQ.,
                    "Chicago, Ill.

"Dear Sir: On the delivery to Mr. Trebilcock of the papers now in your possession pertaining to the $150,000 Ironwood public improvement bonds, and a favorable

report on same to Coffin & Stanton of New York, and on the payment of $25,000 or less by them, we will remit you the amount of your bill due for services to the city, to wit, eleven hundred and thirty dollars ($1,130).

"Yours truly,
"O. E. KARSTE, Cashier."

Defendant Trebilcock went with this letter to Chicago, for the purpose of obtaining from the plaintiff the papers referred to. Karste at once communicated with the plaintiff by telegraph, seeking to get a reduction of the amount, but received an answer refusing to make any reduction.

The court found the foregoing facts substantially. We now quote from the court's further finding, as follows:

"Said letter of Karste was taken by said defendant Trebilcock to Chicago, and on or about the 15th day of October, 1893, was delivered by him to the plaintiff, who, on the following day, delivered to said Trebilcock the papers demanded, together with his written opinion, as requested. The defendant Trebilcock took the papers from the plaintiff, went East, and succeeded in negotiating the bonds for the city, and obtaining thereon from Coffin & Stanton, for the city, a payment of $25,000, which payment was made before the commencement of this suit."

The further facts found by the court are, substantially, that the plaintiff thereafter called upon Karste to pay the amount of his bill, and Karste requested the defendants to pay their note, so that he could pay the same in accordance with his letter which Trebilcock had delivered to the plaintiff, and said to them that he either should sue them for it, or send it to Mr. Steere. Defendants refused to pay the note, whereupon Karste indorsed the note as follows:

"Pay George S. Steere, or order, without recourse.
"BANK OF IRONWOOD,
"O. E. KARSTE, Cashier."

The court found further that Mr. Karste handed this note to the plaintiff, with the indorsement upon it, in the city of Chicago, on Sunday, and that the note was never assigned to the plaintiff by Mr. Karste, otherwise than as

"hereinbefore stated;" that plaintiff received it in satis-
faction of his guaranty; and that Mr. Karste did not pay
any money for the purpose of procuring the papers in
question.   The court then found further that—

  " The plaintiff did not deliver the papers in question to
defendant Trebilcock in reliance upon any guaranty or
promise made by said Karste.   But I find that Trebilcock
told the plaintiff, at their first interview, that he and Mc-
Leod had left the note in suit with the Bank of Ironwood,
to secure Mr. Karste, and that Mr. Karste must make an
arrangement with the plaintiff to get the papers for them,
which Mr. Karste had agreed to do, and that Trebilcock
and McLeod had secured Mr. Karste for the money, and
plaintiff delivered said papers and his opinion in reliance
upon that statement; that there never was any personal
negotiation between Steere, the plaintiff, and the defend-
ants, Trebilcock and McLeod, jointly; that the plaintiff
never did any work or performed any services for the de-
fendants jointly; that defendant McLeod was no party to
any arrangement or bargain between the plaintiff, Steere,
and the defendant Trebilcock; that the defendants, Trebil-
cock and McLeod, were not copartners, nor jointly inter-
ested in any transaction with the plaintiff, Steere; that
defendant Trebilcock had no permission or authority to
make any contract in Chicago which should bind defend-
ant McLeod in any manner; that after the talk between
Trebilcock and Steere in Chicago, and after the papers
were delivered to Trebilcock by Steere, that Steere, by re-
quest of Karste, presented a bill to the city of Ironwood,
accompanied by a sworn affidavit that the city was in-
debted to him in that amount."

  The court found, as matter of law:

  " *First.* That the instrument sued on in this cause is
not a promissory note negotiable under the law merchant;
that the title to said instrument cannot pass by indorse-
ment, but only by assignment,—the bare indorsement
being insufficient, indorsed on the back of a contract, to
transfer title, or operate as an assignment of the contract.
And, in case such an instrument was assigned or trans-
ferred to a third person, such third person would take it
subject to all such equities and defenses as existed be-
tween the original parties.
  " *Second.* There being no proof in this case of any

assignment of the paper in question to the plaintiff, there can be no remedy by the plaintiff in this cause.

"*Third.* The mere handing of the instrument in question by Karste to the plaintiff, in the city of Chicago, on Sunday, is not such an assignment and transfer of title to the plaintiff as will authorize him to bring suit upon it.

"*Fourth.* Under the evidence in this case, there can be no recovery by the plaintiff, or judgment against the defendants, under the count in plaintiff's declaration for labor or services.

"*Fifth.* There can be no recovery against the defendants in this case on account of any contract or conversation had between the plaintiff and defendant Trebilcock, in Chicago, to which the defendant McLeod was not a party.

"*Sixth.* I find, as matter of law, from the undisputed evidence in this case, that the plaintiff is not entitled to recover in this cause, and judgment must be for defendants."

Judgment was rendered by the court below in favor of the defendants.

The contentions of defendants' counsel are:

1. That the defendants are not in the position of principal debtors, who are indemnifying a surety for securing their indebtedness, nor can they be said to have agreed to pay Karste's indebtedness to the plaintiff for services which had already been performed, but that the contract was special, and, in order for the defendants ever to be called upon to pay the amount of the contract, it was necessary that Karste should perform the conditions precedent, namely, to procure the surrender of the papers in question, and to pay what was necessary to pay for their surrender, and, the court having found that Karste has not executed his part of the contract, that there is a failure of consideration, which may be set up by the defense in any suit brought upon the so-called note.

2. That if it can be said that Karste was a surety for the defendants, and that their contract with him was to indemnify him for whatever he might be called upon to pay out as such surety, and that the note was given as collateral to such contract for indemnity, then the plaintiff could not recover; for where a note given by a principal to the surety for his indemnity is in the nature of a collateral security only, the surety may recover on such

note whatever sum he has actually paid out up to the time of the trial, and no more.

3. That the contract in question is not a promissory note, negotiable under the law merchant; therefore, the indorsement upon the back thereof was insufficient to transfer title to the plaintiff. Counsel stated, however, that he does not contend but that an indorsement of the paper in question, accompanied by a valid delivery, would be a sufficient assignment, but that there must be both a valid indorsement and a valid delivery, in order to make an assignment, and that the burden was upon the plaintiff to show such indorsement and delivery; and that, under the findings of the court in this case, it cannot be said that the plaintiff has proved his case.

4. That the court having found that this was not a valid assignment of the instrument in question, and there being nothing before this court to show what the testimony was on which the court made such finding, this court will conclusively presume that there was sufficient evidence to justify the court below in finding as it did; that this court will not assume that there was any lack of testimony necessary to support the findings; and that, therefore, if there were no other questions in the case, the court below having found that the plaintiff was not an assignee of the instrument in question, and it appearing conclusively that the instrument could be transferred only by assignment, the court was right in rendering judgment for the defendants.

We are of the opinion that, under the findings of fact made by the court below, this judgment cannot stand; that the judgment should have been rendered in favor of the plaintiff. The suit is brought upon the note, and the declaration alleges the facts and circumstances under which the plaintiff became possessed of it. While the note is not negotiable, the indorsement upon the back of it by the payee, and its delivery over to the plaintiff, were a sufficient assignment of the instrument to pass the title. *Merchants' Natl. Bank* v. *Gregg,* 107 Mich. 146.

The mere fact that the note was handed to the plaintiff, in Chicago, on Sunday, would not invalidate the delivery. It appears from the findings that the note was delivered to the plaintiff, and received by him, in satisfaction of

the guaranty. When the indorsement was actually made upon the note, and when the agreement was made by which the plaintiff was to receive it in satisfaction of his warranty, does not appear. At least, it does not appear that such an arrangement was made on Sunday. The instrument sued upon was not a Sunday contract, but a promise to pay, lawfully made, and transferred to the plaintiff upon a valuable consideration; and the mere fact that it was handed to him on Sunday would not defeat its operation as a valid delivery. Even if this were not so, there is no showing upon this record but that such a delivery would be valid, in the State of Illinois, though made on Sunday. At the common law, this delivery would be good. *Adams* v. *Hamell*, 2 Doug. (Mich.) 74; *O'Rourke* v. *O'Rourke*, 43 Mich. 58.

The note was given to Mr. Karste by the defendants for the purpose of enabling him to obtain from the plaintiff the papers which he had in his possession, and also his opinion as to the validity of the bonds. Mr. Karste had procured these services to be rendered through his brokers in the city of Chicago. The defendants were desirous of obtaining the benefit of these services, and induced Mr. Karste to procure the documents so that they might be enabled to sell the bonds in New York, as the New York brokers agreed to take them upon the favorable opinion of the plaintiff as to their validity. Mr. Karste could not get these papers without the payment of the amount of $1,130. The defendants undertook and agreed to pay whatever Mr. Karste might be compelled to pay for the papers. The note was given for this purpose; and, to induce the plaintiff to surrender them, the letter set forth was written. We think the contract cannot be construed as contended for by counsel for defendants. It was not an arrangement, as claimed by counsel, that the defendants would be liable only for such an amount as Karste would actually have to pay the plaintiff; for the court found that the defendants executed the note and left it with Karste to indemnify

him, and that it was not known at the time whether any reduction could be had, and that defendants gave their note with the understanding, if any reduction could be had, and Karste did not have to pay the total amount, they were to pay only such amount as he would have to pay. In other words, the court seems to have construed the arrangement as one in which the note was given to Karste as an indemnity; and it appears by the findings, further, that, in order to get the papers, Karste had to obligate himself to pay the whole amount of $1,130. The note being in Karste's hands as an indemnity, the plaintiff had a right to rely upon it; and, if Karste had refused to appropriate it for the purpose of paying plaintiff's claim, there can be no doubt the plaintiff could have compelled it. The mere fact that the court found that the plaintiff did not deliver the papers in question to the defendant Trebilcock upon any guaranty or promise made by Karste could not affect the plaintiff's rights in the premises. The rule is stated in *Curtis* v. *Tyler*, 9 Paige, 432, as follows:

"It is well settled that where a surety, or person standing in the situation of a surety, for the payment of a debt, receives a security for his indemnity, and to discharge such indebtedness, the principal creditor is, in equity, entitled to the full benefit of that security; and it makes no difference that such principal creditor did not act upon the credit of such security in the first instance, or even know of its existence."

See, also, Colebrooke, Collat. Sec. § 218; *New London Bank* v. *Lee*, 11 Conn. 112 (27 Am. Dec. 713); *Moses* v. *Murgatroyd*, 1 Johns. Ch. 119 (7 Am. Dec. 478); *Constant* v. *Matteson*, 22 Ill. 546; *Phillips* v. *Thompson*, 2 Johns. Ch. 418 (7 Am. Dec. 535); *Belcher* v. *Bank*, 15 Conn. 381.

Mr. Karste having assigned the note to the plaintiff, as he would have been compelled to do had proceedings been taken for that purpose, and there having been a valid assignment and delivery, the plaintiff had the right to insist upon the payment of the debt for which the note

was given as collateral security to the undertaking of Karste. It could not be questioned that, if Karste had paid the full amount of the note in the first instance, he would have the right to recover from the defendants the amount so paid by him, and his right of action would have been upon the note.

The finding of the court below that this was not a joint undertaking of the defendants, we think, has no force, when we take into consideration what Trebilcock and McLeod did. They were jointly liable on the note to Karste, and that note was given as an indemnity to him upon his debt to the plaintiff; and, being properly assigned and delivered to the plaintiff, we think the plaintiff's action can be maintained against them both.

The judgment of the court below must be reversed, and a judgment entered here, upon the finding, in favor of the plaintiff, for $1,130, with interest at 6 per cent. from the time of the commencement of this suit,—April 7, 1894. The plaintiff will recover costs of both courts.

The other Justices concurred.